IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HENRY LEE SIMINGTON,

                      PLAINTIFF

v.                     Case No. 4:07-cv-4005

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                      DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Henry Lee Simington, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability income benefits (DIB) under the provisions of Title II of the Social Security Act (Act). The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 5).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Procedural Background:**

      Plaintiff protectively filed for DIB on December 22, 2004 alleging disability due to osteoarthritis and degenerative disc disease of his back and shoulder. (Tr. 46A-46E). Plaintiff's

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

applications were denied initially and on reconsideration. (Tr. 29-40). Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing on April 25, 2006. Plaintiff, represented by attorney Greg Giles, appeared and testified at the hearing, along with vocational expert (VE) William Elmore. (Tr. 231-254). On July 25, 2006, the ALJ issued an unfavorable decision. (Tr. 13-18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council concluded that no basis existed for review of the ALJ's decision. (Tr. 4-7).

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160

2

F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f) (2003). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3.  Discussion:**

The Plaintiff appealed the decision of the Commissioner finding him not disabled. He claims the ALJ's findings are not supported by substantial evidence in the record; the ALJ erred in finding

3

the Plaintiff had the RFC to perform sedentary work; and the ALJ erred in discrediting Plaintiff's complaints of pain. The Defendant argues the ALJ's decision is supported by substantial evidence; the ALJ properly found Plaintiff had the RFC to perform sedentary work; and the ALJ properly assessed the credibility of Plaintiff's complaints of pain.

### A. Substantial Evidence

Plaintiff argues substantial evidence does not support the decision of the ALJ. This argument is based on two points. Plaintiff first argues he has an impairment or a combination of impairments equal to one listed in 20 C.F.R. § 404.1501, *et seq.*, Appendix 1. Secondly, Plaintiff argues the ALJ did not properly evaluate Plaintiff's medical evidence which establishes a disability.

In support of his argument that Plaintiff has an impairment or a combination of impairments equal to one listed in 20 C.F.R. § 404.1501, *et seq.*, Appendix 1, Plaintiff sets out a list of twenty-four different diagnoses. (Doc. No. 9 Pg. 6). However, Plaintiff does not state which Listing he meets. Plaintiff must present evidence of a diagnosis of a listed impairment that is established by medically acceptable findings based on clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1525. A diagnosis alone does not establish Plaintiff meets or equals a Listing. *See Collins v. Barnhart*, 335 F3rd 726, 730-731 (8th Cir. 2003).

The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or equals the level of severity for any impairment listed in 20 C.F.R. § 404.1501, *et seq.*, Appendix 1. I find substantial evidence supports this finding of the ALJ.

As previously noted, Plaintiff also argues the ALJ did not properly evaluate Plaintiff's medical evidence which establishes a disability. The ALJ did find Plaintiff has a history of treatment

for osteoarthritis and degenerative disc disease of the cervical spin and found these impairments severe. (Tr. 13). However, the ALJ did not find Plaintiff disabled as a result of these impairments.

Plaintiff's two primary treating physicians were Dr. Norris Knight and Dr. Ronald Rush. On November 15, 2004, a few weeks after Plaintiff's alleged onset of disability, Dr. Knight first treated Plaintiff for neck and shoulder pain. (Tr. 90). His neurological examination of Plaintiff was normal. (Tr. 90). Based on his review of a Magnetic Resonance Imaging (MRI), Dr. Knight was of the opinion Plaintiff was experiencing degenerative disc disease and a disc bulge at the C4-C5 level. (Tr. 90). The MRI also showed minimal osteoarthritis in the right shoulder, but Dr. Knight did not feel this was a problem for Plaintiff. (Tr. 90). Based on his exam, Dr. Knight felt Plaintiff's prognosis for his condition in his current job was not very good. (Tr. 90). Although Dr. Knight felt Plaintiff could not perform the particular requirements of his past work, his records do not substantiate Plaintiff's claim that he cannot perform even the exertional demands of sedentary work. (Tr. 89-90).

Plaintiff was also seen several times by Dr. Ronald Rush. These records show Plaintiff was seen for neck and shoulder pain of varying degrees, and that he experienced limited range of motion of his neck and shoulders when he was experiencing more severe pain. (Tr. 96, 98-99, 102, 105, 171-172, 174-175, 178-180, 183, 185-186, 188-189, 191-192, 200, 203, 207, 209, 211-212, 216). Dr. Rush's neurological examination of Plaintiff were unremarkable, with normal gait, normal reflexes, normal motor strength, and normal sensory findings. (Tr. 92, 95-96, 98-99, 102, 105, 171-172, 175, 178, 180, 185-186, 188-189, 191-192). Additionally, there were times when Plaintiff was without neck pain and exhibited full range of motion of his neck, or when he reported only mild neck and shoulder pain. (Tr. 93, 96, 99, 101-102, 104-105, 183-184, 188-189, 197, 199-200, 203,

207, 211-212, 217).

On January 3, 2005, Plaintiff reported to Dr. Rush that he felt he was doing better and his left shoulder pain had improved. (Tr. 95). On January 21, 2005, Dr. Rush stated Plaintiff was permanently unable to return to his previous position, however he would be able to hold a light duty position indefinitely. (Tr. 91). On February 17, 2005, Dr. Rush stated Plaintiff was stable and his shoulder and neck pain continued, but seemed better. (Tr. 92-93). Treatment records from Dr. Rush show Plaintiff's shoulder pain had calmed down in March 2005 and was "stable" as of April 2005. (Tr. 213, 216). Dr. Rush indicated Plaintiff was stable overall in his June 3, 2005 treatment notes. (Tr. 209). On July 8, 2005, Plaintiff indicated he was not having any significant muscle pain or weakness and his pain was mild. (Tr. 208). On November 28, 2005, Plaintiff reported feeling "fairly good" and his neck and shoulders were bothering him "a little." (Tr. 194). On January 26, 2006, Plaintiff stated he had no neck or shoulder pain. (Tr. 188). It appears Plaintiff was last seen by Dr. Rush on June 23, 2006. (Tr. 171). Dr. Rush's musculoskeletal examination of Plaintiff was normal, with no back, neck, leg, or joint pain, and no muscle pain. (Tr. 171).

Plaintiff underwent a functional capacity evaluation, conducted by an occupational therapist and physical therapist with Healthsouth, on March 1, 2005. This was from a referral from Dr. Rush. (Tr. 130-156). The results of this exam indicated Plaintiff had an ability to perform medium level work for an eight-hour day. (Tr. 130). Plaintiff was able to occasionally lift in the heavy category, but was limited in his frequent lifting to 10 to 25 pounds due to his neck pain. (Tr. 130). The exam also indicated Plaintiff exhibited some self-limiting behavior with range of motion testing. (Tr. 130). The results of this exam, which found Plaintiff could perform the requirements of medium work, would support the ALJ's finding that Plaintiff would be able to perform the exertional demands of

sedentary work.  I find the ALJ properly and completely evaluated Plaintiff's medical evidence.

### B. Residual Functional Capacity

Prior to Step 4 of the sequential analysis, the ALJ is required to determine the claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (*quoting Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)).  The Plaintiff has the burden of producing documents to support his or her claimed RFC.  *See Cox*, 160 F.3d at 1206;  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Once the Plaintiff meets that burden, the ALJ bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports its RFC determination.  *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001).  The ALJ also has the duty to develop the record, fully and fairly, even where a claimant is represented by counsel.  *See Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004).  The ALJ is responsible for developing the record because the social security hearings are non-adversarial.  *Id.* Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

In this case the ALJ found Plaintiff retained the RFC for sedentary work.  (Tr. 16-17).

7

Sedentary work is defined as work involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567(a). Social Security Ruling 96-9p further provides that sedentary work requires standing and walking no more than two hours of an eight-hour workday and sitting approximately six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3.

In support of his argument that the ALJ erred in his RFC determination, Plaintiff points to a letter from Dr. Rush dated August 4, 2006. (Tr. 230). This letter was submitted to the Appeals Council after the ALJ rendered his decision on July 25, 2006. The Appeals council considered this letter, but determined it did not provide a basis for changing the decision of the ALJ. (Tr. 4-5).

The Defendant argues the letter of Dr. Rush fails to provide a basis for changing the ALJ decision for four reasons. First, they argue the letter was created in direct response to the ALJ's decision denying benefits to Plaintiff and was done for the purpose of aiding the attempt to obtain disability benefits. Second, they argue Dr. Rush did not cite any specific objective findings in support of his opinion. Third, the records of Dr. Rush did not support the opinions contained in this August 2006 letter. Finally, they argue the letter is a conclusory legal opinion.

I find the second and third arguments of Defendant persuasive. Although Dr. Rush stated in this August 2006 letter that certain activity would lead to a return of his symptoms, he did not expressly state Plaintiff could not perform the requirements of sedentary work, as Plaintiff contends. (Tr. 230). Instead, he recommended that Plaintiff "retire from the workforce in order to prevent any return of symptoms or worsening of his condition." (Tr. 230). Further, in his earlier opinion in January 2005, Dr. Rush stated Plaintiff could return to a light duty position indefinitely. (Tr. 91).

The records do not support a worsening of Plaintiff's condition; rather, Dr. Rush described Plaintiff's pain as stable on a number of occasions. (Tr. 92-93, 188, 194, 209, 213, 216). Dr. Rush's opinions contained in his letter of August 2006 do not change the propriety of the ALJ's decision that Plaintiff could perform the demands of sedentary work. (Tr. 16).

I further find the records of Dr. Knight, Dr. Rush, and the functional capacity evaluation, as were fully discussed above, support the finding of the ALJ regarding Plaintiffs' RFC. These records do not support the level of limitation as alleged by Plaintiff. The ALJ did provide for significant limitations in Plaintiff's capacity for heavy lifting and carrying and afforded some weight to Plaintiff's testimony as to his limitations and his activity level by limiting him to sedentary work. (Tr. 16).

### C. Credibility of Plaintiff's Complaints of Pain

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[3]  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.  *See Polaski,* 739 at 1322.  The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.*  The ALJ

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors.  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007).  Thus, this Court will not require the analysis of these additional factors in this case.

is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In this case, the ALJ did not simply discredit Plaintiff's subjective complaints without explanation. The ALJ properly applied the factors enumerated in *Polaski*, and determined based upon the record as a whole, Plaintiff's complaints were not credible to the extent alleged.

The ALJ reviewed Plaintiff's daily activities and found them to be inconsistent with the medical findings. (Tr. 16). The ALJ found a lack of objective medical evidence to support the alleged disabling painful symptoms. (Tr. 16). Plaintiff was able to take care of his personal needs

without assistance, perform some laundry, prepare small meals, occasionally shop, and occasionally attend church. (Tr. 16, 64-67, 250). Plaintiff's daily activities are not reflective of someone who is disabled and unable to do the sedentary work identified by the ALJ. *See Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999).

The ALJ also considered Plaintiff's medication usage. The ALJ found he no longer took strong pain medication. (Tr. 16). *See Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994)(the lack of strong pain medication is inconsistent with claimant's claim of disabling painful symptoms). At the time of the hearing on April 25, 2006, Plaintiff was only taking Tylenol. (Tr. 249). The fact that Plaintiff primarily took only over-the-counter pain medications discounts his credibility. (Tr. 16, 52, 72, 88).

The ALJ also considered and discussed the objective medical evidence concerning Plaintiff's neck and shoulders, which has been set forth previously in this Opinion. (Tr. 14-15). The medical findings do not support Plaintiff's claim of total disability. Dr. Knight only indicated Plaintiff could not return to his past job. (Tr. 89-90). Dr. Rush specifically released Plaintiff to "a light duty position indefinitely" in January 2005. (Tr. 91). This lack of objective medical evidence in support of Plaintiff's subjective complaints of disabling pain is one important factor for the ALJ to consider when evaluating his credibility. (Tr. 16). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999). Furthermore, the functional capacity evaluation, which concluded Plaintiff could perform medium level work, supports the ALJ's credibility finding. (Tr. 130-156).

I find substantial evidence to support the ALJ's credibility determination of Plaintiff and the ALJ performed a proper analysis of the factors set forth in *Polaski*.

**4. Conclusion:**

The Court has reviewed all of the relevant medical records and briefing in this case. After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ.  Accordingly, the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **5th day of January 2008.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE